<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4177**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL DANYELLE STINSON,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.   Frank D. Whitney, District Judge.   (3:08-cr-00129-FDW-DCK-1)

Argued:  January 27, 2012          Decided:  February 28, 2012

Before MOTZ, KING, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Kevin Andre Tate, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Melissa Louise Rikard, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF**: Angela G. Parrott, Acting Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina; Matthew R. Segal, Allison Wexler, Assistant Federal Defenders, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.   Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

## I.

Michael Danyelle Stinson ("Stinson") appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). On appeal, Stinson challenges the district court's denial of his motion to suppress. For the reasons set forth below, we affirm the judgment of the district court.

## II.

On September 19, 2007, the Mecklenburg Police Department received an anonymous call. The caller reported seeing an armed black male selling drugs out of a red vehicle bearing North Carolina license plates numbered WNE-6746 on Burnette Avenue in Charlotte. The caller further described the man as having a bald head and wearing a white t-shirt and blue shorts. Officers Edwards, Hall, and Carter responded to the call and observed a man (later identified as Stinson) and a vehicle matching the description given by the tipster.[1]

---

[1] As found by the district court, the location identified by the caller was in a high-crime area. Additionally, five months earlier two police officers had been killed near that location. Thus, three officers responded to the call to help ensure officer safety.

Officer Edwards arrived first and observed Stinson leaning against the red vehicle. A woman later identified as Tiffany Gould, an ex-girlfriend of Stinson's, was standing with him. Officer Edwards approached, and asked for and received Stinson's consent to search his person. Officer Edwards also asked Stinson whether he owned the red vehicle. As Officers Hall and Carter arrived on the scene (a minute or so after Edwards), Stinson responded that he did not know to whom the vehicle belonged.

Officer Edwards then conducted a search of Stinson's person, removing two cell phones, a wad of cash, and some keys from his pockets. "While removing the keys from [Stinson's] pocket, Officer Edwards inadvertently pressed a button on the keyless entry pad attached to [Stinson's] keyring while the keys were still in his pocket." (J.A. 195 (order of district court).)[2] The button unlocked the doors to the red vehicle. According to the officers, Stinson immediately began shaking and acting nervous. Officer Edwards further testified that Stinson kept looking around and Edwards was concerned that "he was going to attempt to run." (J.A. 41.) Officer Edwards detained Stinson at

[2] Stinson refers to the "supposedly accidental" triggering, (Opening Br. at 3), and repeatedly disputes that Edwards' triggering of the car's remote key was accidental. But the district court found the testimony of the officers credible on this point, as even Stinson acknowledges. (Reply Br. at 4 n.1.) We find no clear error in that factual finding.

4

that time, by handcuffing him and placing him in the back of Officer Carter's patrol car, with the door open.

Although it is unclear from the record, at some point during the encounter, it appears that Officer Hall asked if he could search the vehicle. According to Officer Hall's testimony, Stinson initially refused to consent to a vehicle search, but once he was seated in the police car, Stinson granted permission to search his vehicle. Officers Edwards and Carter both testified that they did not hear an initial refusal of consent, but they both heard Stinson later consent to the search of his vehicle. After receiving Stinson's consent, Hall searched the vehicle and found a firearm under the driver's front seat. The gun was loaded and a records check showed it had been reported as stolen.

Stinson filed a motion to suppress all physical evidence (including the gun) and statements obtained following the search of his vehicle. He challenged the search of his person on the grounds that he did not consent and he challenged the search of his vehicle on the grounds that his consent was not voluntary. He also argued that the police lacked sufficient grounds to detain him. After an evidentiary hearing at which Stinson chose not to testify, the district court gave the parties an additional opportunity to file supplemental briefing on the motion. The district court subsequently denied the motion and

5

the case was tried before a jury.  The jury returned a guilty verdict and the district court sentenced Stinson to fifty-six months' incarceration, to be followed by a three-year supervised release term.

Stinson noted a timely appeal.  This Court has jurisdiction under 28 U.S.C. § 1291.

III.

Stinson raises three issues on appeal.  First, he contends that the search of his person was invalid because it exceeded the scope of his consent.  Second, he argues that the police seizure of him was not justified by reasonable suspicion. Third, he contends that the search of his vehicle violated his Fourth Amendment rights because his consent to search was not voluntarily given.  For the reasons discussed below, we find no error.

A.

When reviewing a ruling on a motion to suppress, this Court will not disturb the district court's factual findings unless they are clearly erroneous.  United States v. Massenburg, 654 F.3d 480, 485 (4th Cir. 2011).  This includes a district court's determination that a defendant voluntarily consented to a search.  United States v. Digiovanni, 650 F.3d 498, 514 (4th

Cir. 2011) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)). The district court's legal determinations are reviewed de novo. Massenburg, 654 F.3d at 485; United States v. McCoy, 513 F.3d 405, 410 (4th Cir. 2008) Because the district court denied the motion to suppress, this court views the evidence in the light most favorable to the government. United States v. Hampton, 628 F.3d 654, 658 (4th Cir. 2010).

B.

Stinson first contends that the search of his person violated his Fourth Amendment rights. He argues that he consented only to a search for weapons and that the scope of the search of his person exceeded his consent because Officer Edwards searched for and seized other items in Stinson's pockets. According to Stinson, that "illegal search" yielded Stinson's money, phone, and keys, which, in turn, led to the search of Stinson's vehicle. (Opening Br. at 23.) He thus contends that the search of his person violated the Fourth Amendment and tainted the subsequent discovery of the handgun in his car.

Stinson concedes that he did not raise this issue below and we thus review only for plain error. Under this standard, a defendant must show an error that is "plain" and "affects [his] substantial rights." United States v. Olano, 507 U.S. 725, 732-

7

35 (1993) (internal quotation marks and alteration omitted). Even then, the Court may exercise discretion to correct the error only where it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Marcus, 130 S. Ct. 2159, 2164 (2010) (quotation marks and citations omitted); United States v. Hargrove, 625 F.3d 170, 184 (4th Cir. 2010).

As applied here, Stinson's argument fails to meet the plain error standard of Olano. As an initial matter, we reject Stinson's contention that he consented only to a search for weapons. It is true that the district court's opinion stated that Officer Edwards conducted a "protective search," J.A. at 195, and a "search . . . for weapons," J.A. at 198, and that the government acknowledges that Edwards was searching primarily for weapons.

But the district court also found that Stinson voluntarily consented to the search of "his person" when Edwards requested that consent. (J.A. 195.) The scope of a consent search is governed by what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect." Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Neely, 564 F.3d 346, 350 (4th Cir. 2009).

In this case, Edwards testified that he said to Stinson, "Sir, do you mind me searching your person just to make sure

8

that, you know, you don't have any drugs -- weapons or drugs, anything that could harm me." (J.A. 34-35.) According to Edwards, Stinson replied that he allowed him to conduct the search by responding that he did not "mind at all." (J.A. 35.) Edwards' testimony of course indicates that Stinson was consenting to a search of his person not just for weapons, but also for drugs.

While Edwards may not have had authority (absent consent) to do anything other than perform a patdown for weapons, Stinson could consent to a broader search than the law would allow without his consent. See Schneckloth, 412 U.S. at 227 ("In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence."). A "typical reasonable person" would have understood the exchange between Edwards and Stinson to mean that Edwards could search Stinson's pockets. Cf. Jimeno, 500 U.S. at 251. Moreover, several of the officers testified that Stinson's consent had authorized a search of his pockets, and not just a patdown. We thus see no error in a finding that the consent authorized the search here.[3]

_____

[3] Additionally, there was no testimony here that Stinson ever objected to the search of his pockets or the removal of his cell phones, money, or keys. As the Neely court recognized, "a
(Continued)

Having determined that Stinson's consent allowed the search of his pockets for both drugs and weapons, we conclude that Edwards' search did not exceed the scope of the consent given. Thus, Stinson has not established plain error on this issue.

C.

Stinson next contends that he was improperly seized and that there was no reasonable suspicion to detain him.[4] We disagree.

---

suspect's failure to object (or withdraw his consent) when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search." 564 F.3d at 350-51 (quotation marks and citation omitted).

[4] In this case, Stinson was handcuffed and placed in the patrol car, but the patrol car door was left open. Additionally, the time between his detention and when he gave consent to search the vehicle was minimal and consistent with the purposes of the officers' investigation into their suspicions that he was either dealing drugs or was armed. Based on these facts, the district court here was correct in concluding Stinson was detained, but not arrested. United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995) ("Instead of being distinguished by the absence of any restriction of liberty, Terry stops differ from custodial interrogation in that they must last no longer than necessary to verify or dispel the officer's suspicion." . . . "[W]e have concluded that drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest . . . .") (citations omitted); United States v. Elston, 479 F.3d 314, 319-20 (4th Cir. 2007). Therefore, his detention needed to be supported only by reasonable suspicion. Elston, 479 F.3d at 319-20.

10

As this Court has explained:

> In determining whether an officer had reasonable suspicion, we view the totality of the circumstances to determine whether the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. Although the reasonable suspicion standard defies precise definition, it is less demanding than probable cause and falls considerably short of satisfying a preponderance of the evidence standard.

United States v. Griffin, 589 F.3d 148, 152 (4th Cir. 2009) (internal citations and quotation marks omitted). "Reasonable suspicion" is "a commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." McCoy, 513 F.3d at 411 (quoting Ornelas v. United States, 517 U.S. 690, 695-96 (1996)) (alterations omitted).

We conclude that the officers had reasonable suspicion sufficient to detain Stinson. Specifically, the following facts support the district court's determination that there was reasonable suspicion to detain Stinson: (1) the anonymous tipster, who had provided accurate and detailed information describing Stinson and the vehicle, had informed police that Stinson was armed; (2) the encounter took place in a high-crime area where two officers had been killed months before and others had been shot at previously; (3) Stinson had two cell phones and a number of folded cash bills on his person; (4) Stinson lied about the ownership or control of the car, thereby suggesting an

11

intent to hide something; and (5) when confronted with his lie, Stinson became nervous, and began shaking and looking around, which led at least one of the officers to believe that Stinson was about to flee.

Given these facts, the officers had reasonable suspicion to believe criminal activity was afoot and to detain Stinson. Thus, his detention did not violate his Fourth Amendment rights.

D.

As we have noted, shortly after he was detained, Stinson gave consent for the police to search his car. Stinson's final assignment of error is that the district court erred in concluding that his consent to search his vehicle was voluntary. Essentially, he argues that, under the totality of the circumstances, his consent could not have been voluntary.

As this Court recently noted, "[w]hether a defendant's consent to a search is voluntary is a factual question, and, therefore, is reviewed under the clearly erroneous standard." Digiovanni, 650 F.3d at 514. This court "may reverse the district court's finding concerning voluntariness only if 'it can be said that the view of the evidence taken by the district court is implausible in light of the entire record.'" Id. (quoting United States v. Lattimore, 87 F.3d 647, 651 (4th Cir. 1996)).

12

Determining whether consent is voluntary requires an examination of the totality of the circumstances, including factors such as "the characteristics of the accused, his education and intelligence, the number of officers present, . . . the location and duration of the stop [and] [w]hether the person giving consent knew that he possessed a right to refuse consent . . . ." Id. (citing Lattimore, 87 F.3d at 651). The government bears the burden of establishing, by a preponderance of the evidence, that it obtained valid consent. Id. at 513-14. Because we are reviewing the district court's finding that consent was voluntary, however, we view all facts in the light most favorable to the government. Hampton, 628 F.3d at 658. Unsurprisingly, this standard of review frequently leads to affirmance of the district court finding on voluntariness. See, e.g., Digiovanni, 650 F.3d at 514 (affirming finding that consent was involuntary); United States v. Boone, 245 F.3d 352, 362 (4th Cir. 2001) (affirming finding that consent was voluntary); Lattimore, 87 F.3d at 651 (affirming finding that consent was voluntary); United States v. Rusher, 966 F.2d 868, 877 (4th Cir. 1992) (affirming district court's holding that consent was voluntary).

The district court in this case expressly found that Stinson's consent was voluntary under the totality of the

circumstances. There are a number of facts that support that finding:

- Stinson was in a public place, in the early evening, with other people around, including an ex-girlfriend who observed the entire encounter;

- no police officer ever brandished or drew a weapon;

- none of the police officers made any threatening actions or gestures toward Stinson, nor did they threaten force, nor was there evidence of "more subtle forms of coercion" (J.A. 199);

- Stinson had prior law enforcement encounters, including arrests, and thus was no newcomer to the law;

- the duration and extent of the questioning was relatively short, which suggests he was not coerced into finally giving in; and

- no false or misleading statements were made by the police to suggest that Stinson could not refuse consent.[5]

On the other hand, Stinson contends that the following circumstances and facts show that his will was overborne and that his consent was not voluntary:

- he was in handcuffs and detained in the back of the patrol car;

- the police kept his keys, phones and money, despite the fact that those items were legal;

---

[5] Contrast, e.g., Digiovanni, 650 F.3d at 514 (declining to overturn district court's finding of involuntary consent where trooper made "false implication" that a subject had already given consent and could not rescind it).

14

- he had initially declined to consent to the search of his car, according to Officer Hall;[6]

- there were three police officers responding to the call, thereby exhibiting a show of force;

- no _written_ consent was requested or given, despite officer testimony that consent forms were available to them;

- the police did not expressly inform Stinson of his right to refuse consent; and

- Stinson himself had only a ninth grade education and trivial employment history, which would make him more likely to be intimidated by the police and perhaps less likely to understand he had a right to refuse consent.

Stinson emphasizes, in particular, that the seizure of his keys, wallet and phone meant that he was not "free to leave," and argues from this that he was not free to refuse consent. But the test for determining the voluntariness of consent is not whether an individual is free to leave, but whether a person felt free to refuse permission to search. Indeed, this Court

---

[6] The district court acknowledged a discrepancy in the officers' testimony about whether there was an initial refusal to consent, but specifically found that Stinson explicitly consented to the search of his vehicle and that he had failed to produce any evidence that the consent was ever revoked. We further note that, even if Stinson initially refused to consent, this refusal also shows that Stinson knew he could refuse consent. Viewed in this way, his initial refusal supports a finding of voluntariness. See Schneckloth, 412 U.S. at 233 (discussing Davis v. United States, 328 U.S. 582 (1946), wherein the fact that an initial refusal was "soon followed by acquiescence" was determined to support the conclusion that consent was voluntary).

and others have found consent voluntary when an individual is otherwise detained, including being in handcuffs. See, e.g., United States v. Watson, 423 U.S. 411, 424 (1976) (concluding that the defendant's consent to search automobile was voluntary and valid, despite the fact that he had been arrested and was in custody, and noting "the fact of custody alone has never been enough in itself to demonstrate a coerced . . . consent to search"); Boone, 245 F.3d at 362 ("consent given while in custody may still be voluntary"). In any event, no one factor controls the determination of voluntariness; it is made on the totality of the circumstances. See Digiovanni, 650 F.3d at 514.

Comparing the competing lists of circumstances and viewing them in their totality, we conclude the district court's finding that Stinson voluntarily consented to the search of his vehicle was not clearly erroneous, i.e., not "implausible." See id. at 514.

IV.

For the aforementioned reasons, Stinson has not established that the district court erred in denying his motion to suppress. We therefore affirm Stinson's conviction and the judgment of the district court.

AFFIRMED

16