[Cite as *State v. Starkey*, 2012-Ohio-6219.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0038** |
| JEFFREY L. STARKEY, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2011 TRC 16356.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Daniel G. Keating*, Keating, Keating & Kuzman, 170 Monroe Street, N.W., Warren, OH 44483 (For Defendant-Appellee).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, the state of Ohio, appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting appellee, Jeffrey Starkey's, motion to suppress. The issues are whether the trial court abused its discretion in ruling on an untimely motion to suppress and whether the trial court erred in granting the motion, which suppressed Starkey's urinalysis results due to a violation of R.C. 4506.17. For the following reasons, the judgment is reversed and remanded.

{¶2}   On July 5, 2011, at around 7:30 a.m., Mr. Starkey was driving a dump truck eastbound on State Route 303.  An oncoming vehicle, with two adult occupants, attempted a left turn directly in front of the dump truck.  As a result, the dump truck collided with the turning vehicle, ultimately killing both occupants inside.

{¶3}   Officer Whitacre arrived on scene to investigate the crash.  At some point, Mr. Starkey was asked to submit to an on-scene blood or urine test.  Mr. Starkey agreed to a urine test and provided a sample.  The sample uncovered marijuana metabolite.  Mr. Starkey was not found at fault for the accident; however, a ticket charging him with OVI, in violation of R.C. 4511.19(A)(1)(j)(viii)(II), was filed in the Portage County Municipal Court.

{¶4}   A trial date was set for Tuesday, April 17, 2012.  On Friday, April 13, 2012, Mr. Starkey filed a motion to suppress the results of the chemical test.  The record indicates the court did not receive the motion until Monday, April 16, 2012.  In his motion, Mr. Starkey argued the chemical test results must be suppressed because the police conduct was in violation of R.C. 4506.17, the implied consent statute for commercial vehicles or licenses, in that the officers did not have reasonable grounds to believe he was driving a commercial vehicle while having a measurable or detectible amount of alcohol, or controlled substance, or a metabolite of a controlled substance.

{¶5}   On the morning of trial, Mr. Starkey orally requested the suppression motion be considered and a hearing be held in the interests of justice and fairness.  The trial court declared the motion would be considered, offering the state a continuance to prepare for a hearing.  However, as two officers, Officer Whitacre and Officer Hughes, were present in anticipation of trial, the state elected to proceed with the suppression

2

hearing that day. The state explained that, if given a continuance, it still intended to call only Officer Whitacre and Officer Hughes.

{¶6} During the suppression hearing, Officer Whitacre testified he did not have any reasonable grounds to suspect Mr. Starkey was operating the dump trunk with any detectable amount of metabolite or controlled substance in his system. Instead, Officer Whitacre explained it was the Ohio Highway Patrol's policy to obtain a urine or blood sample from any or all drivers involved in fatal crashes.

{¶7} Upon consideration, the trial court granted the motion to suppress and dismissed the charge.

{¶8} The state now timely appeals, with the execution of the suppression stayed pending disposition of the appeal. The state raises two assignments of error. The first assignment of error states:

{¶9} "The trial court abused its discretion allowing Starkey to argue the merits of an untimely motion to suppress without presenting good cause justification for the untimely filing."

{¶10} Motions to suppress evidence on the basis the evidence was unlawfully obtained must be made before trial. Crim.R. 12(C). Specifically, the motion "shall be made within 35 days after arraignment or seven days before trial, whichever is earlier." Crim.R. 12(D). The trial court has discretion to extend the time for making a motion to suppress when in the interest of justice. *Id.* Failure to abide by Crim.R. 12(C) or Crim.R. 12(D) constitutes waiver of the defenses or objections, though the trial court for good cause shown may grant relief from the waiver in its discretion. Crim.R. 12(H).

3

Here, the trial court granted relief from the waiver and allowed Mr. Starkey's untimely suppression motion to be heard.

**{¶11}** As such, the question on review is whether the trial court abused its discretion in granting relief from the waiver. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶12}** In this matter, it cannot be concluded the trial court abused its discretion. Counsel for Mr. Starkey, in requesting the matter be considered, noted that he overlooked the suppression issue and asked that his client not be punished for his oversight. The trial court, in its sound discretion, found this to be good cause, and nothing in the record suggests otherwise.

**{¶13}** We note the trial court, in light of its ruling, offered the state a continuance to prepare for the suppression issue; however, the state declined and elected to go forward with the hearing that same day. On the record, the state affirmed that its two witnesses were already present, and it did not intend to call any other witnesses; hence, it explained, there was no reason for a delay.

**{¶14}** The state's first assignment of error is without merit.

**{¶15}** The state's second assignment of error states:

**{¶16}** "As the State established a consent exception to the Fourth Amendment protections against warrantless search and seizures, the trial court erred in excluding chemical test results of a urine sample."

**{¶17}** An appellate court's review of a decision on a motion to suppress involves

4

issues of both law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a suppression hearing, the trial court acts as the trier of fact and sits in the best position to weigh the evidence and evaluate the credibility of the witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court is required to uphold the trial court's findings of fact provided they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Once an appellate court determines the trial court's factual findings are supported by the record of the hearing, the court must then engage in a de novo review of the trial court's application of the law to those facts. *State v. Lett*, 11th Dist. No. 2008-T-0116, 2009-Ohio-2796, ¶13, citing *State v. Djisheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶18} In his suppression motion before the trial court, Mr. Starkey argued the police action violated R.C. 4506.17 in that the investigating officer did not have any reasonable grounds to believe Mr. Starkey was driving with a "measurable or detectable amount" of alcohol or a controlled substance. Thus, the trial court analyzed the suppression issue under R.C. 4506.17, the informed consent statute for commercial vehicles or licenses. The statute states, in relevant portion:

{¶19} (A) Any person who holds a commercial driver's license or operates a commercial motor vehicle requiring a commercial driver's license within this state shall be deemed to have given consent to a test or tests of the person's whole blood, blood serum or plasma, breath, or urine for the purpose of determining the person's alcohol concentration or the presence of any controlled substance or a

5

metabolite of a controlled substance.

{¶20} (B) A test or tests as provided in division (A) of this section may be administered at the direction of a peace officer having reasonable ground to stop or detain the person and, after investigating the circumstances surrounding the operation of the commercial motor vehicle, also having reasonable ground to believe the person was driving the commercial vehicle while having a measurable or detectable amount of alcohol or of a controlled substance or a metabolite of a controlled substance in the person's whole blood, blood serum or plasma, breath, or urine. * * *

{¶21} (C) A person requested to submit to a test under division (A) of this section shall be advised by the peace officer requesting the test that a refusal to submit to the test will result in the person immediately being placed out-of-service for a period of twenty-four hours and being disqualified from operating a commercial motor vehicle for a period of not less than one year, and that the person is required to surrender the person's commercial driver's license to the peace officer.

{¶22} In its judgment entry granting the suppression of the chemical test and dismissing the charge, the trial court found the officers did not have reasonable grounds to believe Mr. Starkey was driving a commercial vehicle while having a measurable or detectable amount of alcohol or a controlled substance, in violation of R.C. 4506.17(B). The trial court further found Mr. Starkey was not informed of the consequences of

6

refusing to submit to a test, in violation of R.C. 4506.17(C).

{¶23} It is clear from the record the trial court's factual findings are supported by competent, credible evidence, and further, the information available to the police officers on July 5, 2011, was insufficient to permit them to invoke the provisions of R.C. 4506.17(B) and (C). Both officers at the suppression hearing were unequivocal in their testimony that there were no reasonable grounds to believe Mr. Starkey had a measurable or detectable amount of alcohol or drugs. The officers also testified they did not believe Mr. Starkey was informed of the administrative consequences of failing to submit to a test.

{¶24} The question is, however, whether the court erred in applying the exclusionary rule to suppress the chemical test results of Mr. Starkey's urine as a result of the statutory violations. The state argues the court erred in applying the exclusionary rule because the statutory violation falls short of a constitutional violation, i.e., Mr. Starkey's Fourth Amendment rights were not violated when he was asked to voluntarily submit to a blood or urine test, in accordance with the Ohio Highway Patrol policy. Conversely, Mr. Starkey, making no distinction between constitutional and statutory infringements, simply contends that when urine is illegally obtained, the remedy is exclusion.

{¶25} We begin our analysis by examining the parameters and scope of the exclusionary rule. In a Fourth Amendment context, the judicially-created exclusionary rule, created to deter illegal police conduct, provides that evidence obtained through unconstitutional searches and seizures is subject to exclusion and prospectively inadmissible. *State v. Young*, 146 Ohio App.3d 245, 257 (11th Dist.2001), citing *U.S. v.*

7

*Leon*, 468 U.S. 897, 916 (1984), and *Mapp v. Ohio*, 367 U.S. 643 (1961). As the state correctly notes, however, the exclusionary rule is applicable only to constitutional violations. Specifically, in *State v. Myers*, 26 Ohio St.2d 190 (1971), the Ohio Supreme Court explained the exclusionary rule would *not* be an available remedy for those statutory violations which fall short of constitutional violations, unless the legislature expressly mandated the application of the exclusionary rule in the statute. *Id.* at 196. Throughout the years, the Ohio Supreme Court has continued to follow this policy, holding the exclusionary rule non-applicable to violations of state statutes not rising to the level of a constitutional violation. *See State v. Downs*, 51 Ohio St.2d 47, 63-64 (1977); *State v. Davis*, 56 Ohio St.2d 51, 56 (1978). *See also Kettering v. Hollen*, 64 Ohio St.2d 232, 235 (1980); *State v. Unger*, 67 Ohio St.2d 65, 69-70 (1981); *State v. Droste*, 83 Ohio St.3d 36 (1998), syllabus.

**{¶26}** In so doing, the Court has recognized "the violation of a state statute may rise to the level of a constitutional violation." *State v. Weideman*, 94 Ohio St.3d 501, 505 (2002), citing *State v. Jones*, 88 Ohio St.3d 430, 432 (2000). For instance, in *Jones*, 88 Ohio St.3d at 440, a full custodial arrest for a minor jaywalking offense, in violation of R.C. 2935.26(A), was also found to be an unreasonable search and seizure given the minimal government interest and the serious intrusion upon the arrestee's liberty and privacy, therefore violating the Fourth Amendment. This ruling was later specified as authoritative to the Ohio Constitution when the Ohio Supreme Court, in *State v. Brown*, 99 Ohio St.3d 323, found Section 14, Article I of the Ohio Constitution to provide greater protection than the Fourth Amendment of the United States Constitution against warrantless arrests for minor misdemeanors. Conversely, in the unrelated *State*

8

*v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, the Ohio Supreme Court found that an officer's extraterritorial traffic stop in contravention of R.C. 2935.03 did *not* also violate the Fourth Amendment as *the officer had probable cause to initiate the stop*. *Id.* at ¶1. These cases demonstrate that there is no *per se* rule for determining whether a statutory violation also comprises a constitutional violation; instead, the facts must be evaluated based on the totality of the respective circumstances.

{¶27} We note the statute does not expressly provide for exclusion of evidence. As explained by the Ohio Supreme Court in *Jones*, 2009-Ohio-316, ¶21, in evaluating a different statute:

> {¶28} Although it could have done so, the General Assembly chose not to provide any remedy for a violation of R.C. 2935.03(A)(1). * * * [W]e are not in the position to rectify this possible legislative oversight by elevating a violation of R.C. 2935.03 to a Fourth Amendment violation and imposing the exclusionary rule, because the stop in this case was constitutionally sound.

{¶29} Accordingly, in this case, the evidence can only be excluded if the statutory violation rises to the level of a constitutional violation. If the evidence was obtained without offending any constitutional protections, the exclusionary rule will not apply. Thus, we must decide whether this particular statutory violation rises to the level of a constitutional violation given the facts and circumstances of the case.

{¶30} The collection and testing of urine indeed constitutes a search and seizure under the Fourth Amendment. *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 617 (1989). Though not entailing a surgical intrusion into the body, "the collection and

9

testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable[.]" *Id.* The chemical testing of urine can potentially "reveal a host of private medical facts" about the individual. *Id.* In commenting on the nature of the intrusion, the United States Supreme Court has stressed that "'[t]here are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all.'" *Id.*, quoting *National Treasury Employees Union v. Ron Raab*, 816 F.2d 170, 175 (5th Cir.1987).

**{¶31}** As the search is scrutinized under Fourth Amendment standards, the constitutional imperative that the search be "reasonable" is triggered. Thus, the question becomes, under the facts of this case, whether the request and ensuing search, in violation of R.C. 4506.17(B) and (C), was an "unreasonable" search. If it was, we must therefore conclude that the statutory violation rose to the level of a constitutional violation. *See City of Willoughby v. Dunham*, 11th Dist. No. 2010-L-068, 2011-Ohio-2586, ¶63 (Cannon, J., concurring in part, dissenting in part).

**{¶32}** In this case, the search was performed without a warrant. It is well founded that searches conducted without a warrant are per se unreasonable, subject only to certain "carefully drawn" and limited exceptions. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, ¶10, citing *Jones v. United States*, 357 U.S. 493, 499 (1958) and *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455 (1971). The state raises one such exception here. It claims Mr. Starkey's *voluntary* consent to the search negated the need for obtaining a warrant. *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("a search properly conducted pursuant to a valid consent is constitutionally permissible").

**{¶33}** As it was the state's evidence, it held the burden to show by clear and positive evidence that Mr. Starkey's *voluntary* consent eliminated the need for obtaining a warrant. "To establish the consent exception to the probable-cause and warrant requirements of the Federal and Ohio Constitutions, the state has the burden of establishing by 'clear and positive' evidence that consent was freely and voluntarily given." *State v. Lett*, 11th Dist. No. 2008-T-0116, 2009-Ohio-2796, ¶32, citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) and *State v. Posey*, 40 Ohio St.3d 420, 427 (1988). "'Clear and positive' evidence is the equivalent of clear and convincing evidence." *State v. Jones*, 187 Ohio App.3d 478, 2010-Ohio-1600 (6th Dist.), ¶50, citing *State v. Danby*, 11 Ohio App.3d 38, 31 (6th Dist.1983).

**{¶34}** "Whether a consent to search was voluntary or was the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the circumstances." *Lett*, 2009-Ohio-2796, ¶32, citing *Schneckloth v. Bustamonte*, 412 U.S. at 248-249 and *State v. Chapman*, 97 Ohio App.3d 687, 691 (1994). Further, an individual's voluntary consent may validate even an illegal detention and subsequent search if the consent was an independent act of free will, i.e., a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. *Florida v. Royer*, 460 U.S. 491, 501-502 (1983), *State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph three of the syllabus; *State v. Aguirre*, 11th Dist. No. 2010-P-0057, 2012-Ohio-644, ¶30, ¶39; *Jones*, 2010-Ohio-1600, ¶48.

**{¶35}** Here, in investigating the circumstances of the crash, police requested Mr. Starkey's consent to submit to a urine test pursuant to an Ohio Highway Patrol policy.

11

Testimony indicates the Ohio Highway Patrol policy allows for suspicionless, warrantless searches and seizures via blood or urine testing for drivers involved in fatal crashes. The state argues in its merit brief that the evidence was obtained pursuant to this policy and *not* necessarily pursuant to the provisions of R.C. 4506.17(B).

{¶36} However, if the state obtains the evidence pursuant to this policy, it *always* bears the burden of establishing not just the *consent* to submit to the test, but the *voluntary* nature of the consent as well. As explained above, this burden must be met by presentation of clear and convincing evidence of the voluntariness of the consent.

{¶37} Whether the state met its burden in this particular case, i.e., whether Mr. Starkey offered his *voluntary* consent by clear and convincing evidence, cannot be determined on this record. The trial court stated in its entry that Mr. Starkey "consented" to submit to the urine test, but the court did not gauge the voluntariness of any such consent, instead relying on the statutory violation to suppress the evidence. Similarly, the trial court's entry does not address whether the state met its burden to prove voluntary consent by clear and convincing evidence. This is a pivotal determination because if the consent was, in fact, "voluntary," the search would not offend the Fourth Amendment and the exclusionary rule would not apply.

{¶38} Crim.R. 12(F) states that, in ruling on any motion where factual issues must be resolved, "the court shall state its essential findings on the record." As the issue of "voluntariness" is a factual determination, this matter must be remanded to the trial court for the purpose of determining whether the state has met its burden by clear and convincing evidence. If, by clear and convincing evidence, Mr. Starkey offered his

12

consent freely and voluntarily, there has been no violation of the Fourth Amendment protections, and the evidence should not be excluded.

{¶39} To aid in this determination, the court may, in its discretion, reopen the suppression hearing to consider additional evidence from the state and the defense given that the hearing appeared to focus solely on the language of the statute and not on the issue of voluntary consent.

{¶40} As such, the state's second assignment of error has merit. The judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and the case is remanded for proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.