[Cite as *State v. Brunty*, 2014-Ohio-4307.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-A-0007** |
| JEFFREY E. BRUNTY, JR., | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CR 405.

Judgment: Affirmed.

*Mike DeWine,* Ohio Attorney General, State Office Tower, 30 East Broad Street, 25th Floor, Columbus, OH 43215 and *Micah R. Ault*, Special Prosecuting Attorney, Ohio Attorney General's Office, 615 West Superior Avenue, 11th Floor, Cleveland, OH, 44113 (For Plaintiff-Appellant).

*Dominic J. Vitantonio,* Argie, D'Amico & Vitantonio, 6449 Wilson Mills Road, Mayfield Village, OH 44143 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} The State of Ohio appeals from the judgment entry of the Ashtabula County Court of Common Pleas, granting Jeffrey E. Brunty's motion to suppress the results of a blood test. The trial court found that Mr. Brunty did not voluntarily consent to having his blood drawn. We agree, and affirm.

{¶2} At approximately 5:41 p.m., on February 24, 2013, a collision occurred at the intersection of U.S. Route 20 and State Route 11 in Ashtabula Township, Ohio, between vehicles driven by Mr. Brunty and Richard Davis. Mr. Davis' wife, Donna, was a passenger in his car. Ohio State Patrol Trooper Daniel Jesse, along with Trooper Dominic Picerno, arrived shortly thereafter. Mr. Davis was badly injured, and taken to the Ashtabula County Medical Center.

{¶3} Trooper Jesse spoke with Mrs. Davis, a third party witness, and Mr. Brunty. When the trooper initially spoke with Mr. Brunty, the latter was seated in his vehicle, where he remained for most of the time it took to clear the crash scene. Mr. Brunty initially informed Trooper Jesse that he had a green light and was proceeding through the intersection when the crash occurred. Mrs. Davis and the third party witness indicated that the Davises had the right of way.

{¶4} Trooper Jesse was informed by fire department personnel that Mr. Davis was a probable fatality (he died that evening). He testified at the suppression hearing that patrol procedures alter when a fatality results from an automobile accident. He relayed the information about Mr. Davis to his supervisor, Sergeant Klingensmith, who responded to the scene. Sergeant Klingensmith contacted Lieutenant Sutton, who called the Ashtabula County prosecutor's office. Trooper Jesse testified that normal procedure for the state patrol with fatal accidents is to request instructions from the county prosecutor on whether to obtain a blood sample from the persons involved. Eventually, Trooper Jesse was informed by Sergeant Klingensmith that the prosecutor ordered getting a blood sample from Mr. Brunty, without a warrant, and by using any reasonable force necessary.

2

{¶5} Trooper Jesse asked Mr. Brunty whether he would voluntarily provide a blood sample. Mr. Brunty responded that he would not, and he would not submit to any testing at all. Trooper Jesse then told him his blood sample would be obtained by force, if necessary. Mr. Brunty responded he did not wish to give a sample, but he would accompany the trooper and submit to the test. Mr. Brunty was taken to the Ashtabula County Medical Center, where Nurse Kimberly Sue Strang performed the extraction. She had Mr. Brunty sign a hospital consent form when she did so.

{¶6} Analysis of the blood sample indicated that Mr. Brunty had a prohibited amount of methamphetamine in his system.

{¶7} Trooper Jesse testified that throughout the more than two hours it took to clear the crash scene, he had no suspicion that Mr. Brunty was under the influence of drugs or alcohol.

{¶8} July 25, 2013, the Ashtabula County Grand Jury returned an indictment in five counts against Mr. Brunty, including two counts of aggravated vehicular homicide, second and third degree felonies, respectively; one count of vehicular homicide, a first degree misdemeanor; and two counts of operating a vehicle under the influence of drugs, both first degree misdemeanors. He was arraigned August 18, 2013, and entered pleas of not guilty to all the counts. Motion practice ensued. The suppression hearing went forward January 10, 2014. January 27, 2014, the trial court filed its judgment entry, suppressing the blood test results, on the basis that Mr. Brunty's consent to the blood draw was not voluntary. January 31, 2014, the state filed this appeal, having certified pursuant to Crim.R. 12(K) and R.C. 2945.67(A) that it could not

3

proceed with the two counts of aggravated vehicular homicide and the two OVI counts as a result of the trial court's judgment.

{¶9} The state assigns a single error: "The trial court erred by granting defendant-appellee's motion to suppress evidence of blood test results because defendant-appellant freely and voluntarily consented to giving a blood sample." The sole issue presented reads: "Did the trial court err in granting defendant-appellee's motion to suppress evidence of blood test results, where defendant-appellee initially refused to provide a sample, but subsequently consented?"

{¶10} "An appellate court's review of a decision on a motion to suppress involves issues of both law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003 Ohio 5372, ¶8, * * *. During a suppression hearing, the trial court acts as the trier of fact and sits in the best position to weigh the evidence and evaluate the credibility of the witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, * * * (1992). Accordingly, an appellate court is required to uphold the trial court's findings of fact provided they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, * * * (1982). Once an appellate court determines the trial court's factual findings are supported by the record of the hearing, the court must then engage in a de novo review of the trial court's application of the law to those facts. *State v. Lett*, 11th Dist. No. 2008-T-0116, 2009 Ohio 2796, ¶13, citing *State v. Djisheff*, 11th Dist. No. 2005-T-0001, 2006 Ohio 6201, ¶19." (Parallel citations omitted.) *State v. Starkey*, 11th Dist. Portage No. 2012-P-0038, 2012-Ohio-6219, ¶17.

{¶11} Pursuant to Ohio's implied consent statute, under certain circumstances an individual involved in a motor vehicle accident must submit to a blood test. *See, e.g.*,

4

R.C. 4511.191(A)(5). The police may, in these circumstances, use "whatever reasonable means are necessary" to obtain a sample. R.C. 4511.191(A)(5)(b). However, as the trial court observed, the implied consent statute is only triggered when a police officer has "reasonable grounds to believe [a] person was operating or in physical control of a vehicle" while under the influence of drugs or alcohol. R.C. 4511.191(A)(3); *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, ¶21-24. In this case, Trooper Jesse testified he had no suspicion Mr. Brunty was under the influence of drugs or alcohol, and the implied consent statute does not apply.

{¶12} "The Fourth Amendment provides that '(t)he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated.' U.S. Const. Amend. IV." *State v. Hill*, 5th Dist. Coshocton No. 2008-CA-0011, 2009-Ohio-2468, ¶10. Article I, Section 14, Ohio Constitution provides similar protection. *State v. Robinette*, 80 Ohio St.3d 234, 238-239 (1997).

{¶13} "It is well-settled that the extraction of blood at the behest of authorities involves a search and seizure of the individual involved. See, e.g., *State v. Sweinhagen* (Nov. 7, 1989), 3d Dist. No. 4-88-3, 1989 Ohio App. LEXIS 4244, *3. Thus, with regard to blood testing, '(t)he burden is on the state (* * *) to demonstrate a voluntary consent to a warrantless search.' *State v. King*, 1st Dist. No. C-010778, 2003-Ohio-1541, at ¶24 (citation omitted). In the context of consensual searches and seizures, the state is required to demonstrate 'that the consent was in fact voluntarily given, and (was) not the result of coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances.' *Schneckloth v. Bustamonte* (1973), 412 U.S.

5

218, 248-249, * * *." (Parallel citations omitted.) *State v. Hatfield*, 11th Dist. Ashtabula No. 2006-A-0033, 2007-Ohio-7130, ¶111.

{¶14} The state argues that by consenting to accompany Trooper Jesse to the medical center for the blood draw, and signing the consent form given to him by Nurse Strang, Mr. Brunty voluntarily changed his mind regarding his initial refusal to submit to any test. The state cites to three cases in support. We respectfully disagree with the state's reasoning. As the learned trial court observed, "a typical reasonable person would consent to the test rather than subject themselves to the forcible withdrawal of their blood." Under the totality of the circumstances in this case, we find Mr. Brunty's consent was obtained by coercion.

{¶15} Further, the cases relied on by the state are distinguishable.

{¶16} In *United States v. Thompson*, D.Conn. No. 3:12CR97 (EBB), 2013 U.S. Dist. LEXIS 132541 (Sept. 17, 2013), DEA agents entered the apartment of Michael Thompson, a suspected member of a drug ring, put Mr. Thompson in handcuffs, and conducted a protective search. *Id.* at *6-7. They then asked him if they could conduct a full search. *Id.* at *7. Mr. Thompson refused, so the agents called headquarters to determine if they could obtain a search warrant. *Id.* at *7-8. While waiting for a return call, the agents did not speak with Mr. Thompson, threaten him, or ask again for consent to search without a warrant. *Id.* at *8. After some 20 to 25 minutes, Mr. Thompson gave his consent to search the apartment.

{¶17} In *Thompson*, the defendant was handcuffed, but not threatened. In this case, Mr. Brunty was told his blood would be taken by force if he did not consent.

6

{¶18} In *United States v. Stinson*, 468 Fed. Appx. 285 (4th Cir.2012), appellant Michael Stinson was approached by police since he answered the description of a man supposedly selling drugs. *Id.* at 286. He consented to a search of his person. *Id.* While doing so, one officer "'inadvertently'" pressed a button on Mr. Stinson's key ring, in his pocket, causing the doors of his car to unlock. *Id.* at 286-287. At some point, one of the officers asked Mr. Stinson if he could search the car, but the latter refused. *Id.* at 287. The officers placed Mr. Stinson under arrest, and into their cruiser. *Id.* After being placed in the cruiser, Mr. Stinson gave permission to search his car where a stolen gun was found. *Id.*

{¶19} In the district court, Mr. Stinson moved to suppress regarding the search of his car, on the basis that his consent was not voluntary. *Stinson* at 287. The district court denied the motion; the matter went to jury trial, and Mr. Stinson was convicted. On appeal, the Fourth Circuit affirmed, finding under the totality of the circumstances, his consent was voluntary. *Id.* at 290-291.

{¶20} In *Stinson*, the defendant was under arrest, but there was no evidence of any threat made by the police to obtain consent to search his car. In this case, Mr. Brunty was specifically told force would be used to draw his blood, if he refused to consent.

{¶21} Finally, the state cites to our own decision in *Hatfield*, *supra*. In that case, Mr. Hatfield was transported to the Ashtabula County Medical Center for treatment following a motor vehicle accident. *Id.* at ¶10-11. The state patrol arrived to question him. *Id.* at ¶13. When asked to submit to a blood test, Mr. Hatfield initially refused, stating he might have traces of alcohol and drugs left in his system from use the day

7

before. *Id.* at ¶50. Later, Mr. Hatfield agreed to a second request for a blood sample. *Id.* at ¶82.

{¶22} Upon being charged with aggravated vehicular homicide and vehicular homicide, Mr. Hatfield moved to suppress, amongst other things, the blood samples obtained from him. *Hatfield* at ¶84-85, 88. The trial court denied the motions. *Id.* at ¶85, 88. Mr. Hatfield was convicted following jury trial. *Id.* at ¶89. On appeal, he argued his consent to the blood draws was not voluntary, for two reasons: (1) that he consented after having admitted to the state patrol he had consumed large amounts of drugs and alcohol at a party; and (2) he was too intoxicated to give voluntary consent. *Id.* at ¶110. This court rejected the argument, having already found the police did not coerce Mr. Hatfield into telling them of his drug and alcohol use, and that witnesses testified he was coherent while at the hospital when the request for the blood draw was made. *Id.* at ¶108-109, 112.

{¶23} In *Hatfield*, there was no evidence of coercion. In this case, there is.

{¶24} The assignment of error lacks merit.

{¶25} The judgment of the Ashtabula County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.

8